# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| AMY MANZANARES and HECTOR MANZANARES, § § § | |
| *Plaintiffs,* § | |
| v. § | Civil Action No. 4:24-cv-191 |
| § | Judge Mazzant |
| EL MONTE RENTS, INC. d/b/a EL MONTE RV, § § § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Exclude Plaintiffs' Expert Mark Goodson, P.E. (the "Motion") (Dkt. #77). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

### BACKGROUND

This is a personal injury case. Plaintiff Amy Manzanares was allegedly injured by a wooden panel in Defendant El Monte Rents, Inc.'s recreational vehicle ("RV") in November 2023 (Dkt. #41). Plaintiffs initially sued the manufacturer of the RV in addition to Defendant (who leases RVs), but the manufacturer was dismissed after the Court granted its unopposed motion for summary judgment (Dkt. #45; Dkt. #49). On June 30, 2025, Defendant moved to exclude Plaintiffs' expert, Mark Goodson, P.E. ("Goodson") (Dkt. #77). The Motion is opposed (Dkt. #89).

Goodson is a consulting engineer licensed in electrical and mechanical engineering (Dkt. #89 at p. 1). He holds a Bachelor of Science in Electrical Engineering from Texas A&M University (Dkt. #89 at p. 1). He studied forensics at UT Southwestern for three years and has

formal training in fire investigation and fire protection (Dkt. #77-2 at p. 1). He has several publications in the field of forensic science (Dkt. #77-2 at p. 1). In 1984, he opened his consulting practice (Dkt. #77-2 at p. 1).

Plaintiffs included Goodson in their expert disclosures (Dkt. #77-1). His expert designation lists three general areas of testimony. First, Plaintiffs seek to have Goodson testify about the "appearance of the lumber that was in place in the RV . . . at the time the accident occurred and whether or not the lumber was original to the RV or changed out from what was originally in the RV" (Dkt. #77-1 at p. 2). Second, Plaintiffs seek to offer testimony about "inspections [Goodson] performed on the actual RV involved in the accident and similar modeled RV inspected and the appearance and status of their paneling" (Dkt. #77-1 at p. 2). Third, Goodson's designation provides that he will testify about the quality of the repairs performed on Defendant's RV and whether the repairs were appropriate and safe (Dkt. #77-1 at p. 2). That includes repairs "that were in place in the most recent inspection in 2025"—after the accident occurred (Dkt. #77-1 at p. 2).

Defendant does not question Goodson's qualifications but challenges his testimony on other grounds. In Defendant's view, Goodson's testimony is irrelevant, unreliable, and unhelpful to the jury (Dkt. #77 at p. 1). The Court ultimately finds the reliability challenge dispositive, so it includes the background pertinent to that ground alone.

Defendant argues that, despite the list of topics in Plaintiffs' expert designations, Goodson only has one conclusion: that the wooden panel was not installed or attached properly (Dkt. #77 at p. 5). That conclusion, according to Defendant, is based solely on the fact that the wooden panel fell (Dkt. #77-3 at p. 5). In support, Defendant provides the following excerpts from Goodson's deposition:

2

> Q. Do you have—well, I'll circle back to that here in a second. You are not offering any opinions about the condition of the [wooden panel] immediately before the incident occurred, correct?
>
> A. Well, except for the fact that it was improperly attached; that is correct.
>
> Q. What's the basis for your opinion that the [wooden panel] was improperly attached immediately prior to the accident?
>
> A. It should not have come off. It just shouldn't have.
>
> Q. And besides that, it just shouldn't have come off, is the basis for your opinion that it was improperly attached or installed?
>
> A. Well, at that time the family was using the motor home, it was not properly attached. I can't tell you when—when the repairs had been made.
>
> * * *
>
> Q. You're not going to tell the jury that there was any damage to the [wooden panel] prior to the incident, correct?
>
> [Plaintiffs' Counsel]: Object to form. You can answer it.
>
> A. I would just tell them it wasn't attached properly. That's all I can do.

(Dkt. #77-3 at pp. 8, 11).

Defendant also elicited testimony that Goodson does not know if Defendant performed any repairs on the wooden panel after purchasing the RV from the manufacturer (Dkt. #77-3 at pp. 10–11). Further, Goodson testified that he did not perform a "failure analysis," "root cause analysis," or "consider any other potential causes for the [wooden panel] falling" besides improper installment (Dkt. #77-3 at pp. 18–19). Defendant also asked Goodson if he used any "technique or underlying theory . . . in arriving at [his] opinions" and he answered "No" (Dkt. #77-3 at p. 19). In sum, Defendant argues, Goodson's bare conclusion that "the party" who installed the wooden panel must have done so improperly because it fell does not carry Plaintiffs' burden to show a reliable method under Rule 702(c) (Dkt. #77 at pp. 5–6).

3

Plaintiffs' response on this point is relatively brief (*See* Dkt. #89 at pp. 2–3). Even though Goodson testified he did not perform a failure analysis, Plaintiffs respond that "Goodson's opinions are based on his inspection of the RV, photographs, and his expertise in failure analysis" (Dkt. #89 at p. 2). According to Plaintiffs, Defendant incorrectly states that Goodson cannot testify to the condition of the wooden panel immediately before the accident, because Goodson stated that it was improperly attached before the accident (Dkt. #89 at p. 2). Plaintiffs conclude by stating that Goodson's methodology is consistent with industry standards for forensic engineering and failure analysis (Dkt. #89 at p. 3).[1]

Plaintiffs also reference Defendant's expert challenge in another motion. In Plaintiffs' Amended Motion for Sanctions, Plaintiffs argue that Defendant spoliated evidence by repairing the panel at issue before Plaintiffs' experts could view it in its original condition—and that Defendant now seeks to benefit from that spoliation by highlighting the fact that Plaintiffs' experts do not know the original condition of the panel (Dkt. #107 at pp. 4–5). That motion is not yet ripe.[2]

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. The Rule was amended in 2023 to provide that:

---

[1] Plaintiffs also mention reliability in another section of the response. There, Plaintiffs state that: "Defendant argues that Mr. Goodson's testimony is speculative and lacks a scientific basis. However, Mr. Goodson's opinions are grounded in his extensive experience and the evidence available. He has clearly articulated the basis for his opinions, which are supported by his inspection and analysis" (Dkt. #89 at p. 3). Further, Plaintiffs state that "While Defendant claims that Mr. Goodson did not conduct certain analyses, his testimony is based on the evidence available and his professional judgment. The absence of certain tests does not render his testimony inadmissible, as his conclusions are based on reliable principles and methods" (Dkt. #89 at p. 3).

[2] The Amended Motion for Sanctions was filed on December 29, 2025 (Dkt. #107). The amendment seems to be based on new evidence produced by Defendant on December 29, 2025 (Dkt. #107 at p. 5). On January 2, 2026, the Court ordered an expedited response (Dkt. #110). The case is set for trial January 12, 2026 (Dkt. #105).

4

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

The amendment was intended to: "(1) 'clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule' and (2) 'emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology.'" *Vega v. Ross Stores Inc.*, No. 4:24-CV-00733-SDJ-BD, 2025 WL 2601538, at *2 (E.D. Tex. Sept. 8, 2025) (quoting FED. R. EVID. 702 advisory committee's note to 2023 amendment).

In *Daubert v. Merrell Dow Pharms., Inc.*, the Supreme Court instructed courts to function as gatekeepers when determining whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable.

*Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id*. at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." 509 U.S. at 595. The *Daubert* factors are not "a definitive checklist or test." *Id*. at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id*. at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (explaining that, "[a]lthough the Daubert analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the

6

expert conclusions themselves"). Although "the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment). It is "the role of the adversarial system, not the court, to highlight weak evidence." *Primrose Operating Co. v. Nat'l Am. Ins.*, 382 F.3d 546, 562 (5th Cir. 2004). The decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

The Court is unconvinced that Plaintiffs carried their burden to show it is more likely than not that Goodson's opinions are the product of reliable principles and methods. *See* FED. R. EVID. 702; 702(c) (requiring the proponent to demonstrate that reliability is "more likely than not"). The Court reaches this conclusion for three main reasons. First, the evidence does not identify a methodology for the Court to evaluate. Second, even if Plaintiffs identified a methodology, the evidence does not show its reliability by a preponderance of the evidence. Third, whether Defendant spoliated evidence has no bearing on the admissibility of Goodson's testimony. Accordingly, Goodson's testimony will be excluded.

**I.  Plaintiffs did not identify a methodology for the Court to evaluate.**

Plaintiffs' response states that Goodson's opinions are based on his inspection of the RV, photographs, and his expertise in failure analysis (Dkt. #89 at p. 2). But Goodson testified he did not employ a failure analysis, and Plaintiffs do not identify any expert materials showing otherwise (Dkt. #77-3 at p. 19). The sufficiency of the materials Goodson relied on is a different question from

7

reliability, so the inspection and photographs do not address the question at hand. *Compare* FED. R. EVID. 702(b) (requiring sufficient facts and data), *with* FED. R. EVID. 702(c) (requiring that opinions be the product of reliable principles and methods).

The only evidence Plaintiffs cite in their entire response is the following deposition excerpt:

> Q. Do you have -- well, I'll circle back to that here in a second. You are not offering any opinions about the condition of the fascia board immediately before the incident occurred, correct?
>
> A. Well, except for the fact that it was improperly attached; that is correct.

(Dkt. #89-2 at p. 2).

Plaintiffs use this excerpt to argue that Defendant incorrectly states that Goodson offers no opinion about the status of the wooden panel prior to the accident. But the Court is not so concerned with whether Goodson testified that the panel was improperly attached. Rather, the Court is concerned that it lacks the information required to perform its gatekeeping function under Rule 702(c) to evaluate the reliability of the method underlying this opinion. The quoted excerpt alone does not assist the Court in performing this function, and Plaintiffs do not attach or cite any other evidence. Goodson himself answered "No" when asked if he used any "technique or underlying theory that [he] relied upon in arriving at [his] opinions" (Dkt. #77-3 at p. 19). While the Court does not give conclusive weight to that answer because it does not have the entire deposition transcript and it is up to the Court to determine if a reliable method exists, it was Plaintiffs burden to otherwise demonstrate his "testimony is the product of reliable principles and methods" FED. R. EVID. 702(c).

Defendant attached Goodson's report to the Motion (Dkt. #77-2), so the Court considered it as well when evaluating the reliability of Goodson's testimony. For the reasons explained in the

8

following section, to the extent the report identifies a method, it is insufficient to show reliability by a preponderance of the evidence.

## II. Plaintiffs did not demonstrate that any potential method is reliable by a preponderance of the evidence.

Even assuming Goodson's report identifies a method, the Court is unable to conclude that it is more likely than not a reliable one.

The report begins with Goodson's educational and professional background (Dkt. #77-2 at pp. 1–2). It then provides background on the case (Dkt. #77-2 at p. 2). Then, Goodson provides his findings (Dkt. #77-2 at p. 2). The Findings section begins by explaining that the "actual piece of lumber has not been examined," but that a photograph was examined (Dkt. #77-2 at pp. 2–3). The wooden panel that struck Amy Manzanares was apparently attached to the lumber depicted in the photograph (Dkt. #77-3 at p. 4).[3]

Below the photograph, Goodson explains that the lumber appears to have been ripped as opposed to cut with a cross cut technique (Dkt. #77-2 at p. 3). The Court considered whether this portion of the report amounts to a reliable method. However, Goodson was asked about this portion of the paragraph during his deposition, and his testimony leaves the Court unable to analyze reliability. Defense counsel stated that she wanted "to understand the significance of the findings here regarding the lumber being ripped versus crosscut" (Dkt. #77-3 at p. 15). Goodson responded that "There's no significance in this case" (Dkt. #77-3 at p. 15). While his answer is cut off after

---

[3] Goodson originally stated that the piece of lumber in the photograph was the wooden panel that injured Amy Manzanares (Dkt. #77-2 at pp 3–4). But in his amended report, Goodson recognized that the "ripped" piece of lumber in the photograph did not hit Amy Manzanares (Dkt. #77-2 at p. 4). Instead, the wooden panel was attached to the lumber depicted in the photograph (Dkt. #77-2 at p. 4). When the Court uses the term "lumber," it also refers to the piece of wood depicted in pages three and four of the report, rather than the wooden panel that injured Amy Manzanares.

this point, neither Plaintiffs' nor Defendant's attached deposition transcripts include the rest of the answer (Dkt. #77-3 at p. 15; Dkt. #89-2 at pp. 1–2). Thus, as to this potential method, the Court lacks sufficient information to perform its gatekeeping function.

In the next sentence under the Findings section, Goodson states that "the lumber appears to be actual lumber, as opposed to an engineered wood product (such as MDF, Medium Density Fiberboard)" (Dkt. #77-2 at p. 3).[4] According to Goodson's report, these "observations have more to do with fit and finish of the product; the lumber does not appear to aesthetically match what was found to be used in other similarly outfitted vehicles" (Dkt. #77-2 at p. 3). Even assuming this testimony reflects a method, Goodson's deposition leaves the Court unable to determine that it is a reliable one. On this point, Defense counsel stated "I'm just trying to understand the basis for your opinion that the lumber/raw wood depicted at the top of page 3 does not appear to aesthetically match what was found to be used in other similarly outfitted vehicles" (Dkt. #77-3 at p. 16). Goodson responded as follows:

> I'm talked [sic] about the aesthetics. The appearance of it. This may have -- indeed, this wood product, raw lumber, was probably in all of them, but it doesn't match the -- well, we'll short-circuit this. It would have been cleaner if I had omitted that half sentence, yes.

(Dkt. #77-3 at p. 16).

Neither the report or the deposition excerpts provided by both parties explain how these observations about the type of wood at issue inform Goodson's opinions. Given no other materials, the Court cannot conclude that it is more likely than not this potential method is reliable.

---

[4] Another part of the report uses the Medium Density Fiberboard terminology. Goodson stated that "[a]ssuming the piece that fell in this [RV] was the same as in two motor homes [Goodson] examined, it appears as if the fallen piece is MDF. Examination of the same member on other mother coaches shows that the member (lumber) has a 'finished' appearance, as opposed to raw lumber" (Dkt. #77-2 at p. 5). The report and deposition excerpts do not explain why the wooden panel or lumber being or not being MDF is significant.

10

Next, Goodson's report provides close-up photographs of the lumber to which the wooden panel that injured Amy Manzanares was attached (Dkt. #77-2 at p. 4). Goodson stated that "[o]ne cannot look at the picture (and its blowups) and determine (as an example) what screws . . . were present immediately before the incident" (Dkt. #77-2 at p. 5). According to him, there is "no apparent evidence of any type of adhesive . . . having been used" (Dkt. #77-2 at p. 5). He further explained that "[o]ne cannot look at this piece of ripped lumber and determine how the fallen piece of lumber (presumed MDF) was attached" (Dkt. #77-2 at p. 5). Further, he stated that "in the first blowup, there is evidence of two fasteners being present at some point in time" (Dkt. #77-2 at p. 5). While the analysis of the lack of evidence of an adhesive and screw type could be a method, the Court cannot conclude it is reliable under the circumstances. During his deposition, Goodson testified as follows:

> Q. The holes that are present in the raw board, if -- in your amended report at least, you state you cannot tell what screws were present immediately before the incident occurred just based on your review of those photographs, true?
>
> A. Correct.
>
> Q. You cannot -- you also state you cannot look at that piece of raw [lumber] board and determine how that fallen [wooden panel] was actually attached, correct?
>
> A. That is correct.

(Dkt. #77-3 at pp. 9–10).

Without evidence explaining how Goodson's method can produce reliable results even without analysis of the wooden panel, screws, or adhesives that were in place when the accident

occurred, the Court cannot conclude it is more likely than not the testimony is a product of reliable principles and methods.[5]

To conclude, even if Goodson's report (which Plaintiffs do not rely on) identifies a method, the Court lacks the information sufficient to conclude it is reliable by a preponderance of the evidence. This Court does not question Goodson's thorough qualifications, but in this particular case, Plaintiffs failed to carry their burden to demonstrate reliability.

### III. Potential spoliation of evidence does not bear on the Rule 702 analysis.

It may well be that it was not possible for Goodson to have a reliable method in a case where the wooden panel at issue was repaired before he could ever inspect it. The facts may ultimately show that Defendant spoliated evidence by repairing the panel after a duty to preserve arose. That is not the question before the Court here. Admission of expert testimony as a spoliation sanction is a "wholly inappropriate" remedy. *Howard v. BP Expl. & Prod., Inc.*, No. CV 17-3543, 2023 WL 3737903, at *7 (E.D. La. May 31, 2023). Such a remedy would have this Court "flatly ignore its responsibilities" as a gatekeeper of inadmissible expert testimony under the Federal Rules of Evidence. *Id.* As a result, the Court cannot rely on what method Goodson might have been able to employ without the alleged spoliation as a basis to admit his testimony.

---

[5] The remainder of Goodson's report includes photographs from an exemplar motor home taken in 2024, which appear to show a wooden panel attached to lumber, but Goodson does not provide any analysis accompanying the photographs (*See* Dkt. #77-2 at p. 6). Then, the report provides photographs taken in a 2025 inspection of the actual RV where the incident occurred (Dkt. #77-2 at pp. 6–7). After that, Goodson concludes that the quality of the repairs depicted is "problematic" because exposed staples and poorly-fit screws appear on the wooden panel (Dkt. #77-2 at pp. 7–8). But Plaintiffs fail to address Defendant's argument that repairs taken after the accident are subsequent remedial measures (*See generally* Dkt. #89). To the extent Plaintiffs do not offer the photographs as subsequent remedial measures, the Court is concerned that they are offered as improper character evidence offered to suggest that Defendant must have performed faulty repairs in the past. It is unnecessary to rule on this subsequent-repair evidence at this time because Plaintiffs do not rely on Goodson's report in their attempt to show reliability (and, in any event, the Court is not bound by the rules of evidence when deciding preliminary questions under FED. R. EVID. 104(a)). The Court will take up the matter when ruling on Defendant's Motion in Limine (Dkt. #65).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Exclude Plaintiffs' Expert Mark Goodson, P.E. (Dkt. #77) is hereby **GRANTED**.

**IT IS SO ORDERED.**

SIGNED this 5th day of January, 2026.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE