# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| AMY MANZANARES and HECTOR MANZANARES, § § § *Plaintiffs,* § § v. § § EL MONTE RENTS, INC. d/b/a EL § MONTE RV, § § *Defendant.* § | Civil Action No. 4:24-cv-191 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are three related motions: Plaintiffs' Amended Motion for Sanctions Against El Monte Rents, Inc. for Spoliation of Evidence (the "Motion for Sanctions") (Dkt. #107), Plaintiffs' Motion to Strike Affidavit as Unreliable and Adverse Jury Instructions (the "Motion to Strike") (Dkt. #108), and Plaintiffs' Motion for Sanctions Against El Monte Rents for Spoliation of Evidence (the "Original Motion for Sanctions") (Dkt. #95) (together, the "Motions"). Having considered the Motions and the relevant pleadings, the Court finds that the Motion for Sanctions (Dkt. #107) should be **GRANTED in part and DENIED in part** and the Motion to Strike (Dkt. #108) and Original Motion for Sanctions (Dkt. #95) should both be **DENIED as moot**.

### BACKGROUND

This is a personal injury case. The facts are more thoroughly set forth in the Court's May 14, 2025 Memorandum Opinion and Order (Dkt. #49). The facts that follow relate to the Motions before the Court.

I.     **Undisputed Facts**

Plaintiff Amy Manzanares was injured after a wooden panel in Defendant's recreational vehicle ("RV") fell and hit her head (Dkt. #41). This occurred in November 2023 (Dkt. #41). On November 22, 2023, Plaintiff Hector Manzanares returned the RV to Defendant (Dkt. #113). He informed Defendant's manager at its McKinney location ("Khan") about the injury and the wooden panel's condition (Dkt. #113). Two repair orders for the RV at issue exist.

     **A. The First Repair Order**

One of the repair orders is dated November 22, 2023 (the "First Repair Order") (Dkt. #113-1 at p. 5). It contains a "Special Instructions" line near the top (Dkt. #113-1 at p. 5). There, the words "Fix front slideout interior pa" are printed (Dkt. #113-1 at p. 5). The language is relevant because the wooden panel at issue is attached to the slideout (*See* Dkt. #107 at p. 1; Dkt. #113 at p. 1). Below that, a list of services, along with descriptions and dates for the services appear (Dkt. #113-1 at p. 5). The only service referring to the slideout reads "CHECK SLIDE OUTS" and December 11, 2023, is handwritten next to it as "12-11-23" (Dkt. #113-1 at p. 1). There are no explicit references to the wooden panel in the First Repair Order (*See* Dkt. #113-1).

     **B. The Letter, the Notice, and Khan's Photograph**

On January 22, 2024, Plaintiffs' counsel emailed Khan a letter of representation indicating she represents Plaintiffs (the "Letter") (Dkt. #107-6). On January 26, 2024, Plaintiffs' counsel emailed Khan a notice of preservation of evidence (the "Notice") (Dkt. #107-1). The Notice warned not to alter or destroy evidence, including tangible things (Dkt. #107-1 at p. 1). In an affidavit submitted to the Court in opposition to Plaintiffs' original motion for sanctions, Khan stated that the panel was repaired on December 11, 2023 (before receiving the Letter or Notice),

2

citing the First Repair Order (Dkt. #96-1 at pp. 2–3). In the same paragraph providing the December 11, 2023 date, Khan stated that he "took this picture at or near the time that the repair was made" (Dkt. #96-1 at p. 2). A photograph showing a repaired panel appears immediately below the paragraph (Dkt. #96-1 at p. 3). As discussed below, Khan took this photograph *after* receiving the Letter in January 2024. Plaintiffs filed suit on March 1, 2024 (Dkt. #1).

### C. Plaintiffs' Requested Inspection and the Second Repair Order

On August 14, 2024, Plaintiffs asked to inspect the RV (Dkt. #107 at p. 2). On August 21, 2024, Defense counsel advised that she was checking with her client to determine the location of the RV (Dkt. #107 at p. 2). A second repair order for the RV at issue is dated August 22, 2024 (the "Second Repair Order") (Dkt. #107-3), the day after Defense counsel responded to the inspection request. This order has no special instructions like the First Repair Order (Dkt. #107-3 at p. 1). It contains a service description that reads as "MISC LABOR PANEL BY DRIVER SEAT IS MISSING" (Dkt. #107-3 at p. 1). Plaintiffs highlight that a service history report on the second page states "MISC LABOR" (Dkt. #107-3). Unlike the First Repair Order, this order contains no handwritten dates (Dkt. #107-3).[1] Defendant did not give Plaintiffs dates to inspect the RV until December 2024 (Dkt. #107 at p. 2). It is undisputed the panel was repaired by that time. Based on these facts, Plaintiffs filed their Original Motion for Sanctions (Dkt. #95), to which a response and reply were filed (Dkt. #96; Dkt. #98).

---

[1] Plaintiffs' reply to the Motion for Sanctions includes a scanned copy of the Second Repair Order that *does* have handwritten notes, unlike the one attached to the Motion for Sanctions and Original Motion for Sanctions (Dkt. #114-3; Dkt. #95-4). The reply does not address the significance of these changes other than labeling the exhibit a "completed" repair order. The Court finds this difference unessential to its rulings.

3

### D. Defendant Produces Khan's Native Photograph

On December 29, 2025, Defendant produced the "native" version of the photograph Khan included in his affidavit (Dkt. #107 at p. 5). The data from the photograph reveals it was taken on January 22, 2024, at 2:30 p.m. (Dkt. #107-5). This was seven minutes after Plaintiffs' counsel emailed the Letter to Khan at 2:23 p.m. (Dkt. #107 at p. 6). As a reminder, Khan represented taking the photograph on or near December 11, 2023, and that he did not receive the Letter or Notice until after the repairs were already complete (Dkt. #96-1 at p. 4).

The production of the native photograph prompted Plaintiffs to file their Motion for Sanctions on December 29, 2025 (Dkt. #107), which is opposed (Dkt. #113). Plaintiffs replied (Dkt. #114). Also on December 29, 2025, Plaintiffs filed their Motion to Strike, targeting Khan's affidavit (Dkt. #108). There, Plaintiffs re-urge the Court to issue sanctions (Dkt. #108).[2]

## II. The Arguments

Plaintiffs argue that Defendant spoliated evidence by repairing the panel.[3] They argue that the facts demonstrate Defendant did not repair the panel until after Plaintiffs requested to inspect the RV, mainly relying on the Second Repair Order dated August 26, 2024. In their view, the "CHECK SLIDE OUT" description in the First Repair Order, dated December 11, 2023, does not support a finding that the wooden panel was actually repaired that day. Plaintiffs also argue that the evidence conclusively shows Khan lied to the Court when he represented he took the photograph

---

[2] The Motion to Strike is not ripe, but no response is needed. *See, e.g.*, *Tubwell v. Specialized Loan Servicing, LLC*, No. 3:17-CV-15-DMB-RP, 2018 WL 1981903, at *3 (N.D. Miss. Apr. 27, 2018) (acknowledging that FED. R. CIV. P. 7(b) does not preclude a court from issuing an order before the time to respond has expired). Resolution of the Motion for Sanctions renders the Motion to Strike moot, and, in any event, "motions, memoranda, and the exhibits attached to them are not pleadings subject to a motion to strike." *Gibson v. Md. Motor Vehicle Admin.*, No. CV 20-3220-BAH, 2024 WL 51132, at *7 (D. Md. Jan. 4, 2024) (citation modified). The remainder of this order addresses the Motion for Sanctions because the arguments there are substantially the same as those in the Motion to Strike.

[3] Unless otherwise indicated, this paragraph references arguments from the Motion for Sanctions (Dkt. #107).

4

on or around December 11, 2023. Plaintiffs therefore ask the Court to instruct the jury that Defendant spoliated evidence as a sanction.

Defendant denies intentionally or willfully spoliating evidence.[4] According to Defendant, the wooden panel was re-attached or repaired on December 11, 2023, which it argues pre-dated any duty to preserve. Moreover, Defendant argues that the December repair was performed in accordance with its normal operating procedures. As to the August 2024 repair, Defendant argues that subsequent repairs to the wooden panel became necessary following a long-term rental that month. And as to the affidavit, Defendant stands by Khan's representation, because he used the phrase "at or near" the time of the December 11, 2023 repair in his affidavit. Defendant argues that Plaintiffs cite to no authority "setting a rigid time limit on how courts are to interpret" that phrase. Thus, in Defendant's view, sanctions are unwarranted.

Plaintiffs reply that the December 11, 2023 repair, if any, is not the central evidence because: (1) Defendant put the RV back in service even after receiving the Notice and Letter in January 2024; and (2) the Second Repair Order is dated August 22, 2024, the day after Defense counsel stated she would ask Defendant about Plaintiffs inspecting the RV (Dkt. #114 at p. 2).

### III. The Requested Relief

Plaintiffs make three asks. First, they ask the Court to instruct the jury as follows:

1. Defendant El Monte intentionally spoliated evidence in order to conceal evidence that was unfavorable to [it] and would have shown that El Monte was aware of prior damage to the panel at issue.

2. Defendant El Monte intentionally spoliated evidence in order to conceal evidence that was unfavorable to [it] and would have shown that El Monte had made repairs to the panel prior to Plaintiffs' rental.

---

[4] Unless otherwise indicated, this paragraph references arguments in Defendant's response to the Motion for Sanctions (Dkt. #113).

5

    3. Defendant El Monte intentionally spoliated evidence in order to conceal evidence that was unfavorable to [it] and would have shown that El Monte's prior repairs to the panel were not safe.

    4. Defendant El Monte's intentional destruction of evidence indicates that introduction of the panel's condition post-accident would have been unfavorable to El Monte's case.

(Dkt. #107 at p. 8).

In sum, Plaintiffs ask the Court to instruct the jury that Defendant did spoliate evidence—and what the jury should conclude about the spoliation.

Second, Plaintiffs ask the Court to allow the jury to hear evidence of the alleged spoliation (Dkt. #107 at p. 8). And third, Plaintiffs ask that the Court order Defendant to pay all costs and attorneys' fees associated with the pursuit of "this motion" (Dkt. #107 at p. 1).

## LEGAL STANDARD

Spoliation is a longstanding doctrine that applies to "the destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (citing *Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). A court may impose appropriate sanctions "[i]f a party with a duty to preserve evidence fails to do so and acts with culpability." *Lopez v. Kempthorne,* 684 F. Supp. 2d 827, 890 (S.D. Tex. 2010) (quoting *Smith v. Am. Founders Fin. Corp.,* 365 B.R. 647, 681 (S.D. Tex. 2007)). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id.*

"Under the spoliation doctrine, a jury may draw an adverse inference that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." *Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir.

2008) (citation modified). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713.

## ANALYSIS

Because a genuine issue of material fact exists as to spoliation, the Court will grant Plaintiffs' request to introduce evidence on the issue at trial. The Court will not, however, instruct the jury that spoliation occurred (unless the evidence conclusively establishes so at trial). That request will therefore be denied without prejudice. The Court will defer its ruling on the request for attorneys' fees and costs until after the jury determines whether spoliation occurred (which will be an issue for the jury unless spoliation is conclusively established or conclusively negated at trial).

This section proceeds in three parts. The Court first summarizes relatively recent Fifth Circuit case law (not raised by the parties) that counsels courts against taking the spoliation issue away from the jury when a genuine issue of material fact exists. The Court then explains why it finds that a genuine issue of material fact exists as to spoliation in this case. Lastly, the Court elaborates on how it will handle spoliation at trial in light of the Fifth Circuit's guidance.

**I.    The Doctrine of Spoliation after *Van Winkle v. Rogers***

In *Van Winkle v. Rogers*, 82 F.4th 370, 379 (5th Cir. 2023), the Fifth Circuit held that a district court abused its discretion when denying spoliation sanctions. The facts of that case also involved a vehicle-related accident. But rather than a wooden panel in an RV, a tire that fell from a tractor-trailer was at the heart of the case. *Id.* at 373. The plaintiff was directly behind the tractor-trailer when the tire came off, causing him to crash. *Id.* After the crash, the tractor-trailer's driver reported the incident to his employer, who instructed him to load the tire remnants onto the tractor-trailer before leaving. *Id.* The tractor-trailer eventually reached the employer's facility

7

around 40 days later. *Id.* at 373, 376. What happened to the tire remnants afterward is uncertain. *Id.* at 373. The employer's position was that the tire remnants were likely sold for scrap in the ordinary course of business. *Id.* at 373, 376.

The plaintiff sued the driver and his employer almost a year after the accident. *Id.* at 373. Pertinent to the spoliation issue, the plaintiff alleged that the employer destroyed evidence despite having a duty to preserve. *Id.* at 374. The plaintiff had circumstantial evidence of spoliation. *Id.* Namely, the Fifth Circuit considered the following as circumstantial evidence: (1) the employer destroyed the tire remnants despite knowing that litigation was likely; (2) the employer did not maintain records regarding the type of remanufactured tires at issue; (3) the employer initially admitted that it received a letter of representation from plaintiff's counsel ten days before the tire remnants were destroyed (an admission it later withdrew). *Id.* at 375.

The Fifth Circuit explained that a duty to preserve arises when "the party has notice that the evidence is relevant to the litigation *or should have known that the evidence may be relevant*." *Id.* (emphasis added) (citation modified). After the crash, the driver advised his employer that the tractor-trailer lost a tire, that plaintiff's vehicle was hit, that plaintiff was injured and taken the hospital, that emergency crews were on the way, and that law enforcement had arrived. *Id.* With those facts, the Fifth Circuit concluded a duty to preserve the tire existed. *Id.*

The Fifth Circuit then evaluated the effect of the letter of representation. *Id.* No evidence that the employer received the letter before destroying the tire existed. *Id.* at 376. But this finding had no effect on the duty to preserve. *Id.* The Fifth Circuit agreed with the district court's conclusion that the employer "was on notice from the events at the time of the accident that the tire would *likely* be relevant to *a* claim by the injured driver." *Id.* (emphasis added).

8

After finding a duty to preserve, the Fifth Circuit turned to whether the employer breached that duty in bad faith. *Id.* The Fifth Circuit explained that "[t]here is no bad faith in the destruction of evidence if, at the time the alleged spoliator disposed of this potential evidence, it was unaware that it might be relevant to the plaintiff's claims." *Id.* (citation modified). "Alternatively, a moving party would have a stronger argument for spoliation if she could prove that the evidence was destroyed after the spoliator had notice of [its] relevance to her claim." *Id.* (citation modified). The Fifth Circuit concluded the employer was aware of the tire's relevance to "a potential claim." *Id.*

The employer's corporate representative testified that it was a customary practice to dispose of a tire that has reached the end of its useful life. *Id.* Based on that, the employer insisted that "bad faith is not established merely through the loss of evidence in the ordinary course of business or through the defendant's standard operating procedures in destroying evidence." *Id.* (first citing *Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975); then citing *Coastal Bridge Co. v. Heatec, Inc.*, 833 F. App'x 565, 573–74 (5th Cir. 2020)).[5] The Fifth Circuit rejected the argument. *Id.* Another corporate representative testified to the employer's policy being that if the employer thinks equipment will be part of litigation, it does its best to preserve it. *Id.* In contrast, the Fifth Circuit noted, the employer's appellate counsel stated there was no formal preservation policy. *Id.* Moreover, appellate counsel stated that the employer did not have a designated storage area in the facility where the tire arrived 40 days after the accident. *Id.* The Fifth Circuit viewed these admissions simply as assertions that the employer lacked actual knowledge of what happened to the tire and that it lacks formal preservation policies. *Id.*

---

[5] After citing *Coastal* as a standard-operating-procedure case, the Fifth Circuit did not reference it again. Defendant relies on *Coastal* in this case, so this Court will analyze it in the next part of this section.

The Fifth Circuit proceeded to analyze the cases that the defendant relied on to argue that adherence to standard operating procedures shields a defendant from an adverse inference of spoliation. *Id.* at 377 (first citing *Vick*, 514 F.2d at 373; then citing *Schreane v. Beemon*, 575 F. App'x 486, 490–91 (5th Cir. 2014) (per curiam) (unpublished)). Both were distinguishable. *Id.* Unlike the defendant in *Vick*, the employer in *Rogers* was on notice that the tire caused an accident. *Id.* "Why the tire separated was a fact question that would need answering, and [the employer] was on notice of the need from the accident itself and the injuries to [the plaintiff]." *Id.* The Fifth Circuit disagreed with the district court's conclusion that the circumstances showed negligence at best. *Id.* The Fifth Circuit's reasoning on that count was fact intensive. *See id.* ("The failure of a company in the business both of recapping tires and then using them on its vehicles to have [preservation] policies . . . and its inability to produce any actual evidence of what happened to the tire, creates a fact question on bad faith." (citing *Rimkus*, 688 F. Supp. at 620, 643–44).

The Fifth Circuit then turned to the *Beemon* case the employer cited. *Id.* There, the government erased prison surveillance footage. *Id.* (citing *Beemon*, 575 F. App'x at 490). The government presented an affidavit from an electronics technician explaining that an automatic system erased footage after fifteen to thirty days unless a prison official identified specific footage for an investigation. *Id.* (citing *Beemon*, 575 F. App'x at 489–90). The *Beemon* court found no evidence that prison officials viewed the footage prior to its deletion. *Id.* (citing *Beemon*, 575 F. App'x at 491). Moreover, the prison officials had no knowledge that the footage was needed until after it was deleted, and they produced at least some footage that was not erased. *Id.* (citing *Beemon*, 757 F. App'x at 491). "Conversely," the employer in *Rogers* "preserved and produced nothing." *Id.*

10

The Fifth Circuit then cited and distinguished another spoliation case, which neither side relied on. *Id.* (citing *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)). In *King*, the plaintiff failed to notify the defendant that a railroad crossing malfunctioned at the time of the accident and instead did so three years later. *Id.* at 377–78 (citing *King*, 337 F.3d at 556). The defendant introduced evidence that records related to the railroad crossing were retained according to regulations and destroyed for innocuous reasons. *Id.* (citing *King*, 337 F.3d at 556). "In contrast," the *Rogers* employer was "immediately notified that the tire would be at the center of any litigation stemming from the accident" and lacked actual knowledge of what happened to the tire scraps. *Id.*

After these case illustrations, the Fifth Circuit turned to the issue of how trial courts should deal with cases where the spoliation facts are disputed. *Id.* The Fifth Circuit started by echoing the Seventh Circuit's conclusion that bad faith is "a question of fact like any other." *Id.* (quoting *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013)). If "a genuine dispute of material fact exists as to bad faith," the Fifth Circuit concluded, "a jury should make that determination." *Id.* The Fifth Circuit then provided examples of ways that other circuits have submitted the issue to the jury.

The Fourth Circuit approved of a district court's decision to permit the jury to draw an adverse inference only if the jury found spoliation. *Id.* (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 157 (4th Cir. 1995)). "Rather than decid[e] the spoliation issue itself," the district court in *Vodusek* "provided the jury with appropriate guidelines for evaluating the evidence." *Id.* (citing *Vodusek*, 71 F.3d at 157). The Third Circuit found no error when a district court issued a "permissive adverse inference jury instruction to allow the jury to resolve the genuine disputes of material fact concerning spoliation." *Id.* (citing *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 81–85 (3d Cir. 2019)).

The Fifth Circuit then examined how courts in this circuit have "sent such fact questions to the jury before." *Id.* The Fifth Circuit first cited *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 906 & n.4 (5th Cir. 2010) (per curiam) (unpublished). There, a Fifth Circuit panel "did not disturb" a district court's decision to decline "to rule on the plaintiff's motion for sanctions, for an adverse inference instruction, and for summary judgment with respect to its spoliation claims" by submitting the spoliation issue to the jury. *Id.* (citing *Union Pump*, 404 F. App'x at 903, 904–07).

Another panel cited with approval a district court's decision to give "both parties the freedom to put forward evidence about document destruction" and to "defer a decision on whether a spoliation instruction is warranted until the close of trial." *Id.* at 378–79 (internal quotation marks omitted) (quoting *BCE Emergis Corp. v. Cmty. Health Sols. of Am., Inc.*, 148 F. App'x 204, 219 (5th Cir. 2005) (unpublished)).

In a footnote, the Fifth Circuit in *Rogers* also cited two district court opinions. *Id.* at 379 n.1. One court concluded that despite the absence of direct evidence of spoliation, "a jury could nonetheless infer some degree of culpability based on several pieces of circumstantial evidence." *Id.* (quoting *Cornejo v. EMJB, Inc.*, No. SA-19-CV-01265-ESC, 2021 WL 4526703, at *5 (W.D. Tex. Oct. 4, 2021)). The Fifth Circuit also cited the *Rimkus* case. *Id.* (citing *Rimkus*, 688 F. Supp. 2d at 620, 643–44). There, Judge Rosenthal concluded that there was "sufficient evidence for a reasonable jury to find" spoliation. *Rimkus*, 688 F. Supp. 2d at 644.

After surveying how courts have handled disputed spoliation facts, the Fifth Circuit turned to the case before it. *Rogers*, 82 F.4th at 379. It found "sufficient evidence to create a genuine dispute of material fact" as to whether the defendants "destroyed the tire in bad faith." *Id.* Thus, the

12

plaintiff should have been "permitted a jury instruction that if jurors find bad faith, they may infer that the destroyed evidence would have been adverse" to the employer's defense. *Id.*

In the end, the Fifth Circuit cautioned trial courts not to "freely give such an issue to the jury." *Id.* It emphasized the need to do so in *Rogers* based on the circumstantial evidence presented. *Id.* The Fifth Circuit reiterated that the employer "destroyed the most crucial piece of evidence just weeks after learning that its tire may have caused an accident," "could not explain why it transported the tire to its . . . facility or what happened to the tire," and could not "demonstrate it had any formal preservation or retention policy for its equipment, like tires, that may have caused an injury." *Id.* Under those circumstances, a fact issue required jury determination. *Id.* Denying sanctions was therefore an abuse of discretion. *Id.*

With *Roger*'s guidance in mind, the Court turns to the facts before it. For the reasons explained below, a genuine issue of material fact as to spoliation exists. A jury determination is therefore required unless spoliation is conclusively negated at trial.

**II.     Application of *Van Winkle v. Rogers***

The Court concludes that the case before it differs from *Rogers* in significant respects—but also shares similarities and unique facts that persuade the Court the spoliation issue should be left to the jury. The Court starts with the differences it finds most significant.

First, in *Rogers*, the tire remnants were destroyed, while here, the wooden panel was repaired. But *Rogers* cites the *Guzman* case, which states that spoliation may be "the destruction *or* the significant and meaningful alteration of evidence." *Rogers*, 82 F.4th at 374 (emphasis added) (citing *Guzman*, 804 F.3d at 713). Here, a genuine issue of material fact exists as to whether the repair constituted a significant and meaningful alteration of evidence. As Defendant argued in a

13

motion to exclude one of Plaintiffs' experts, the expert could not testify to facts such as "the condition of the [wooden panel] immediately before the Incident," and "the types of fasteners that were present immediately before the Incident" (Dkt. #77 at p. 6). Perhaps if the repair had not occurred, the expert could have. Based on the facts alleged, the Court cannot conclude that no fact issue exists as to the significant and meaningful alteration of evidence.

Second, the accident in *Rogers* was more severe, necessitating emergency services, law enforcement, and plaintiff being transported to the hospital. The Fifth Circuit focused on these facts when explaining why a duty to preserve arose after the driver notified the employer about the accident in *Rogers*. *Rogers*, 82 F.4th at 375. The Court does not cast doubt on Plaintiff Amy Manzanares's injuries, but the accident was objectively less severe compared to the car accident in *Rogers* which required immediate hospitalization. Nevertheless, it is undisputed that Khan was informed about the accident, and it is the role of the jury, not the Court, to decide whether the difference in severity means that Defendant was unaware of facts giving rise to a duty to preserve evidence for potential litigation. *See id.* at 378 (citing with approval the district court in *Union Pump*, which allowed the jury to determine if the defendants had an obligation to preserve).

Third, unlike in *Rogers*, the Court lacks context about whether the industry of RV-leasing implicates the need for preservation and retention policies. In *Rogers*, the Fifth Circuit seemed to emphasize the employer's business model. *See id.* at 377 (explaining that the lack of retention policies for a company that both recaps tires and uses them on its vehicles, coupled with the inability to produce actual evidence of what happened to the tire, created a fact issue as to bad faith). Here, the Court lacks sufficient evidence to conclude that an RV-leasing company like Defendant is similarly situated to the employer in *Rogers*. But nothing in the *Rogers* opinion suggests that this

factor was dispositive to the Fifth Circuit's finding that a genuine issue of material fact existed, so the Court will not take the spoliation issue away from the jury on this basis.

The Court now turns to the similarity it finds most significant as to whether a genuine issue of material fact exists on the issue of spoliation. Both the *Rogers* employer and Khan, Defendant's manager at its McKinney location, were informed that parts of their vehicles caused accidents. Plaintiff Hector Manzanares informed Khan about the accident the day after the accident and before any repairs. And like the *Rogers* court, this Court concludes that the letter of preservation was not required to impose a duty to preserve. *Id.* at 376. Thus, even if Defendant's representation that the repair occurred on December 11, 2023 (before receiving the Letter or Notice but after the accident) is truthful, it is not dispositive if the jury finds Defendant knew the wooden panel "would likely be relevant to a claim" by Plaintiffs. *Id.*

As to Defendant's argument that the panel was repaired according to standard operating procedure, making any sanctions unwarranted, the Court finds a genuine issue of material fact exists on that issue. To support this argument, Defendant relies on three cases: *Vick*, *Coastal*, and *Smith v. Chrysler Group, LLC*, No. 1:15-CV-218, 2016 WL 7741735 (E.D. Tex. Aug. 31, 2016).[6]

The Court finds *Vick* distinguishable for the same reason the Fifth Circuit did in *Rogers*: the *Vick* defendant had no notice the documents at issue could be relevant to litigation, while Khan was informed about the accident and injuries to Plaintiff Amy Manzanares. *See Rogers*, 82 F.4th at 377 (distinguishing *Vick* because the employer in *Rogers* knew that the tire "caused an accident"). Sufficient evidence to create a fact issue supports that Defendant knew that "why [the panel fell]

---

[6] The Court omits a pincite from *Smith* because Defendant did not provide one.

15

was a fact question that would need answering," and that Defendant "was on notice of the need from the accident itself and the injuries" to Plaintiff Amy Manzanares. *Id.*

Defendant also relies on the unpublished *Coastal*. In that case, however, the district court granted summary judgment for the defendant on the claims against it partially based on a finding that the plaintiff spoliated evidence. *Coastal*, 833 F. App'x at 572. The grant of summary judgment was reversed, and the case does not suggest it would have been error for the district court to submit the spoliation issue to the jury after remand. Further, the district court there gave "no explanation" for its finding that the plaintiff acted with a culpable state of mind. *Id.* at 574. Here, the Court does not make a finding that Defendant acted in bad faith. Instead, it finds that a genuine issue of material fact exists on the issue.

*Smith* is also distinguishable. The alleged spoliator there "made repeated efforts to preserve" the evidence at issue. *Smith*, 2016 WL 7741735, at *5. Similar facts are not present here. Moreover, the movant in *Smith* sought dismissal of the case, while here, Plaintiffs ask the Court to submit spoliation evidence to the jury, issue an adverse instruction, and impose monetary sanctions—far less severe sanctions than dismissal. Further, in *Smith*, Judge Crone concluded that a request for lesser sanctions, "such as an adverse inference instruction," was premature because discovery was still ongoing (among other reasons). *Id.* Meanwhile, in this case, discovery is closed with limited exceptions not pertinent here (*see* Dkt. #102; Dkt. #103), and trial is next week.

In sum, none of the authorities cited by Defendant convince the Court that it should take the spoliation issue away from the jury given the facts alleged. Not only because of the major similarity with the *Rogers* case already discussed, but because of unique facts present here. While the Court disagrees with Plaintiffs that the evidence conclusively shows Khan lied to the Court, a

16

jury could find that his statement that he took the photograph "at or near" the time of the alleged December 11, 2023 repair, when he took it seven minutes after receiving the Letter on January 22, 2024, bears on his credibility. Khan's credibility is central to whether the First Repair Order or Second Repair Order display instances of spoliation. Defendant's argument that no "rigid time limit" compels a finding that January 22, 2024, is not near December 11, 2023, helps demonstrate the need for a jury to consider the dates in context. Further, Plaintiffs requested to inspect the RV in August 2024, but Defendant did not make it available until December 2024. Moreover, it is undisputed that the Second Repair Order is dated August 22, 2024, the day after Defense counsel asked Defendant for inspection dates, and that Defendant put the RV back in service after receiving the Notice and Letter from Plaintiffs' counsel. A jury can consider whether these facts, among others in the Motion for Sanctions, support a finding of spoliation.

### III.    The Remedy for Trial

For the reasons above, disputed facts support submitting the spoliation issue to the jury. Based on the genuine issue of material fact standard imposed in *Rogers*, akin to motions for summary judgment and motions for judgment as a matter of law, the Court finds the following relief appropriate.

The Court will grant Plaintiffs' request to introduce evidence of spoliation. Defendant will be permitted to rebut it. If the evidence at trial conclusively establishes spoliation, the Court will consider instructing the jury that Defendant did spoliate evidence and to draw an adverse inference as a consequence. Plaintiffs' request for sanctions in the form of non-permissive adverse inference instructions will therefore be denied without prejudice.

If a genuine issue of material fact as to spoliation remains at the conclusion of trial, the Court will submit a permissive spoliation instruction to the jury in accordance with *Rogers*. For example, one of the approaches *Rogers* approved allowed an adverse inference only if the jury "determined that the evidence was in the control of the defendants, that they had an obligation to preserve it, that the destroyed evidence was relevant to the litigation, and that the evidence was destroyed intentionally and in bad faith." *Rogers*, 82 F.4th at 378 (citation modified). The jury will decide the issue of spoliation unless Defendant manages to conclusively negate spoliation at trial.

As to Plaintiffs' request for monetary sanctions, the Court will defer its ruling until after the conclusion of trial. *See id.* at 378–79 (approving decision to allow both parties to submit spoliation evidence to the jury and defer ruling on sanctions until the close of trial).

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Amended Motion for Sanctions Against El Monte Rents, Inc. for Spoliation of Evidence (Dkt. #107) is **GRANTED in part and DENIED in part**. It is further **ORDERED** that Plaintiffs' Motion to Strike Affidavit as Unreliable and Adverse Jury Instructions (Dkt. #108), and Plaintiffs' Motion for Sanctions Against El Monte Rents for Spoliation of Evidence (Dkt. #95) are **DENIED as moot**.

It is further **ORDERED** that:

- Plaintiffs' request to introduce evidence of spoliation at trial is **GRANTED**.
- Plaintiffs' request to submit non-permissive adverse inference instructions to the jury is **DENIED without prejudice**.
- After trial, the Court will address Plaintiffs' request for monetary sanctions.

**IT IS SO ORDERED.**

**SIGNED this 7th day of January, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE